The following is the case 06-3420 and 07-0212, Chicago Title Land Trust Company v. J.S. Cross Company, et al. v. J.S. 2 LLC, et al. May it please the Court, our appeal and our cross-appeal raise a single issue, although in two different matters, and that issue is, does Section 13-217 of the Code of Civil Procedure permit a party who has voluntarily dismissed a claim without prejudice to reinstate that claim within one year or the remaining period on that claim? Well, let's clear up that part about reinstatement versus what the section provides. It doesn't provide reinstatement, does it? It allows a party to refile an action. Right. It's a new action. It's a new action. In fact, the language is new action. That's correct. So why was Judge Mason wrong to say there's no authority or it's a matter of my discretion whether I'm going to allow you to reinstate a claim that you voluntarily dismissed? There's two parts to that answer. The first part is Judge Mason, respectfully, was confused on the basis of this motion, and she proceeded and ruled on it as if it were a 2-616 motion. Under 13-217, as the Was there a filing before her under 2-616? There was. There was? There was. We filed one single motion. Did you file a response saying the cited statute has nothing, the cited section has nothing to do with the issue that we're asking you to rule on? Our motion was in two parts. The 2-616 portion of that motion sought to amend the pleadings to conform to the evidence adduced at trial. Section B of that motion was the There was no further briefing. On the date that we were in front of her for presentment of that motion, she denied it. She denied it based on So I don't understand why you think she was confused. She simply didn't agree with you. Well, under 13-217, Your Honor, we have an absolute right to reinstate. Then we go back to where we started. And that's where I was getting to. Absolutely, the statute says refile a new action. But in this case, the underlying action was still pending. The parties were still in front of the judge. So are you asking us to reinterpret the statute and say what it really means is that you have a right, absolute right, according to your argument, an absolute right to force the judge to give up some control over the docket because now it's no longer a matter of her discretion. It is a matter of direction from this section that you're citing that she absolutely has to grant you the right to reinstate. We filed the motion seeking that the court reinstate it following Ryan versus the school board, which is a second district case, with very similar facts. And in that case, the court said the most efficacious thing to do here is to allow the party who has voluntarily dismissed a claim without prejudice to bring it back into the action because the parties are still in front of the court and the other claims are still there. Who decides whether it's efficacious or not? The court does. And that's what she decided. Well, what she said was, quite honestly, that it would inure to the prejudice of the defendants if we were allowed to reinstate the case because we had tried a case based on easement and now we were seeking ownership. And at the conclusion of that... And so it really raised the question why the voluntary dismissal occurred at all, given that there was a counterclaim pending that claimed ownership, which suggests that the issue was still before the court. My reflection, Your Honor, is that we dismissed that claim. It was in our first complaint. Our original complaint, count three, sought a declaration either that we owned it, owned the right-of-way, or that we had prescriptive easements over the right-of-way. And when the defendants filed their answer, they raised the right of reversion and reentry statute, which extinguishes such a claim after 40 years. They raised a counterclaim in response to a later complaint down the road. And the counterclaim sought a declaration that they were owners. Well, under the facts that we were going to bring out at trial, which were simply addressed to easement, we didn't challenge their claim of ownership based on the Conrail deed because we didn't have a basis to challenge it. We didn't have a claim for ownership, a competing claim for released in the second district. We now had a claim for ownership because the Diaz case says under the circumstances when the property conveyed is a railroad right-of-way, it's nothing more than an easement, and easements are not extinguished by the 40-year reverter statute. So that brings me back to why we brought the case in front of Judge Mason. Our alternative would have been to file a new complaint. Which you did. Well, we did later. But the alternative would have been to file a new complaint and then seek to consolidate it with her action. When we short-circuit this by seeking to bring the case back before the judge at a time when the parties and the other claims are all still there and there's been no judgment. How close to trial were you? When we brought this? When you asked to reinstate. The trial had concluded. The parties had not yet filed their post-trial motion. Did your motion consider the need to reopen the evidence? It did, and it addressed that. And doesn't that go to the judge's decision that it would prejudice the other side if she granted your motion? The motion pointed out to the court that all the documents it needed to resolve this claim brought back into the action were already before the court. The 1880 deed, the 1885 deed, the 1984 declaration of abandonment of the right of way were already in evidence before the court. The court needed to take no new evidence at all. Or alternatively, we suggested in our motion, the court could conclude and enter an opinion on the case that was tried and reserve the claim that we're reinstating for summary judgment. Because there was no need for discovery, there was no need for further evidence. It was a question of law, purely a question of law. Let me ask you this. Since some of the issues had already been decided at trial, and now you bring your motion to reinstate something, is that normally done in a court? Admittedly, this is a very unusual situation. But the issues that had been tried before the judge were our claim for a declaration that we possessed three easements over the right of way, our claim for a permanent injunction barring the defendants from further interfering with our use and enjoyment of the right of way, and our claim for trespass for the conduct that occurred in January of 2008. I mean, can you cite any Illinois case where a trial has been concluded, and now the lawyer brings a new cause of action? I mean, do you think that that's fair to the defendant who has already prepared his case based on what the complaint has shown? If there were prejudices and if that were a consideration under 13217, it could be resolved by the court taking the case, letting us How old was the case by this time? The case was filed in 2002. Trial was in 2006. And this, there had been no determination, by the way, on any of the claims at the time we brought this motion. We were in the post-trial briefing phase. Well, there has to be a point at a trial when the court has to say this is it. And that's what Judge Mason said when we were in front of her. She said all things must come to an end, except that 13217, which is a limitations section, it's under Article 13 of the Code of Civil Procedure, says we have the right to have litigated on the merits, our claim for ownership, until the statute of limitation lapses. And that statute is still running. And you could do that by refiling, couldn't you? And we did do that. We did refile. But that's the point. That's what we're arguing about. I mean, at some point in time, doesn't a judge also have the administrative obligation to regulate her call and get cases over with and not, you know, go all the way to the end of a trial of a four-year-old case and say, okay, now we're going to add another claim and we're going to keep this open, put it off for summary judgment and motion practice with regard to the new claim? Instead the judge, what's wrong with the judge saying, you know what, I'm not going to keep this case on my call anymore. It's four years old. We just tried it. Go file another reaction. Which is what we did. Well, but you think that that was error. And if this is an abuse of discretion matter, how is that an abuse of discretion by Judge Mason to regulate her call in that way? Respectfully, Your Honor, I don't believe the standard here on a 13-217 is abuse of discretion. The Supreme Court and this Court has held it's de novo review. Well, you relied on the Ryan case. Didn't the Ryan case say that it's a discretionary call by the judge? Assuming that they have the, yes? What is discretionary is whether the judge will retake it. It's not discretionary whether the case may proceed on its merits. Whether the judge, Judge Mason, will allow you to reinstate. Isn't that a discretionary call on her part? Well, I'm going to have to say I agree with you there. Okay. So how is it an abuse of discretion for her to say the case is four years old, we've tried the case, go file it in another number? I don't want a seven, eight, nine-year-old case. Because that cuts off the right we have under 13-217 to reinstate a viable claim for which the statute has not lapsed and it cuts that right off artificially, not on the merits. And the purpose of 13-217 But you did, you did refile it, didn't you? We did refile. How did she keep you from refiling? Well, we refiled and then the defendants challenged it on the basis that it was prior pending action. Well, so now I'm caught between a rock and a hard place. I got this prior pending action and I try to bring it in front of the judge who has the case and who knows the parties and who knows the issues and she says no. And Judge Agron says this is a prior pending action and by the way, it may be restituted judicata. But it wasn't because the defendants So why wasn't the matter consolidated as opposed to subject to a 619-83 before Judge Agron? Before we could get in to file a motion to consolidate, immediately the defendants filed a motion to dismiss. The underlying case here you may have gleaned from He doesn't rule on the motion to dismiss until you've had an opportunity to respond to that motion to dismiss. And did you respond to the motion to dismiss by saying rather than dismissing it, why don't you send it over to consolidate with the other case? We addressed the motion to dismiss. You have some other issues and your time is running out so let's go into those other issues. I'll reserve the rest of my time to respond to the defendant's appeal. Thank you. Please, of course, and counsel. I, with respect to the appeal that counsel has made from Judge Mason's ruling, I would just point out that Let's work backward if you don't mind. Sure. Why don't we start with Judge Agron? Sure. His decision and why was the new filing subject to a dismissal with prejudice ruling when it seems to me that if because nobody wants to, as Justice Palmer has pointed out, you know, you control your own docket but it doesn't mean that you want to deprive someone of the right to file a new action that is authorized by a section. Why not just consolidate? Why not just send it over to Judge Mason and let her deal with it? Well, Justice Garcia, Judge Agron was presented with a motion as to whether the complaint, whether there was another action pending and plainly that substantially was the same as the complaint. And what would that action be? What was that action? That action was actually the counterclaim of JS2. So it was a counterclaim? Yes, Your Honor. It was pending before Judge Mason. As a matter of fact, it had been tried already before Judge Mason. And if you, the arguments that I see Let me ask you about that counterclaim. Yes. The issue of ownership of the railroad right away. Yes. In your counterclaim saying that you owned it. Yes. Your clients owned it. Did that have anything to do with the 40-year period to challenge reversion or to keep the door open for reversion? Was it absolute ownership as opposed to the absence of reversion? Yes. It was absolute ownership. As a matter of fact, the deed that we got from Conrail, the lawyers had an abundance of caution, I guess, when they gave it to us. But it says it's subject to a number of things. And one thing specifically is reversion. Now, why the South Branch did not present some opposition to the counterclaim when it was being tried, I haven't seen in the briefs and I haven't heard. But they did. I mean, they had a chance to try it right then and there. Let's just help me out a little bit regarding this second appeal, the 07 number. Yes, Your Honor. One from Judge Agron. Was that a timely appeal? Is there any issue regarding timeliness on the notice of appeal that was filed? I'm not aware of any issue of timeliness of their appeal of Judge Agron's decision. All right. Then let's work back on the 617 or whatever section that is that allows a new action to be filed following a voluntary dismissal, so long as the statute of limitation hasn't expired. Absolute right? No, Your Honor, because here we have another statute. The Code of Civil Procedure section was at 2-5-619-A3. Right. And it says another action pending is the reason for dismissal of a complaint. So here we have exactly. And what's the philosophy behind that? Is that efficaciousness? Yes, I think it's efficiency. And I've been in some jurisdictions, actually, where they don't have that, oddly. And it doesn't help things to be trying the same thing in two places at once. But here, then, you can see that Judge Agron analyzed it. And they're claiming on a reversion and some other documents, some other title documents in the record as well. Our quick claim deed from Conrail was only as good as whatever the chain of titles showed. And so obviously the chain of title is what the evidence is going to be in each of those two cases. Now, there might be some other things. As a matter of fact, when the South Branch count three for title to the right-of-way was pending, JS2 filed three or maybe four affirmative defenses. And, in fact, the pending count three is presumably what triggered your counterclaim, indicating that you had outright ownership of the right-of-way. It probably did. It seems to make sense. Sure. But let me ask you, regarding these two basically competing positions, outright ownership by your client. Yes. And the reversion claim by South Branch. Yes. Does one, does the decision on the former basically terminate the latter? Well, I suppose not, hypothetically, theoretically. There could be some other party out there who claimed an interest. I think, I don't know, I don't remember if unknown owners were joined to this case or not. But assuming that we're not worried about unknown owners, probably in reality it's either JS2 that owns it, by virtue of the deed it got from Conrail, or it's a South Branch, by virtue of the chain of title and so forth. It's one or the other. On the other hand, it's like anything else. And just so it's clear, once you went to a trial on JS2's claim of outright ownership, there was no obligation for the judge to say you had ownership, or the judge could have said you haven't proved it, in end of matter. Well, that's for sure. And then that would certainly have allowed South Branch to, you know, to file a new action. Indeed. In claiming ownership by virtue of reversion. Indeed, but once she rules. Once she rules. It's a final rule, and it hasn't been appealed from either, because you're aware. That's it. There was a lecture on trial practice that I remember. Irving Younger, when I got out of law school. And he said every lawyer tries a case three times. Once before a trial, in his mind. Once in the courtroom. And after the trial, again in his mind, with thinking what he should have done and could have done. Well. Our case is a lot easier, isn't it? We only rule on the record before us. Yes, Your Honor. But let's see. I would like, I don't want to use up all my time on this, if I may. But on the other hand, whatever questions, Your Honor. I wonder if you could respond to counsel's last point that she was, her right to reinstate, as opposed to, I'm sorry, her right to file a new action as opposed to reinstating was stymied by Judge Agron, and therefore she was caught between a rock and a hard place. She was essentially just deprived of her right there. Justice Palmer, Justice Agron, and he wrote a short, but to the point, opinion. And that he was addressing the things that had to be addressed under 261983. Namely, whether the other action that was pending was substantially the same as the one that South Branch wanted to file in front of him. And you might recall that Judge Agron, by the time he finished that opinion, was apparently somewhat vexed referring to their whole complaint as harassing and vexations. I think he was looking at it as a faintly disguised way of forum shopping. Whether that's true or not, I have no idea. But he was looking at the factors under 261983. It's kind of hard to characterize it as forum shopping if all they did was file a new action and then it gets randomly assigned to a judge in Chancery and it happened to be Judge Agron. That's right. So. Sure. Did I answer your? Yes, you did. Thank you. But the obvious remedy for that implication that it was forum shopping is to just move to consolidate. Sure. And it would have been consolidated. Well, I mean. I assume. Again. If you were so persuasive on the motion to dismiss. The simpler thing. I mean, it's just an afterthought. I mean, we all think of better things we could have done when I walk out of this room. I might think of something I should have said and didn't say. But I can't give you a call or make another motion on it. But that's the way. That's what trial work is all about. It's an adversary proceeding. I mean, I hardly meant to say that here. Do you want me to move on? With respect to our appeal, Your Honors. I wanted to put, as you can see, we appeal Judge Mason's finding of three easements. Especially since there is no location or dimensions of any of the easements. Well, let me follow up on Justice Gordon's point about cases and need for case law authority to support the position you're taking. And that is some sort of case that says the exactness that you're seeking to impose on the trial court regarding the easements is a fatal flaw if it doesn't exist. Well, I have cited them in my brief. There's no question that you've cited cases. My question is, do you have a case that says it's a fatal flaw in an easement claim to not give specific locations and not have the judge include those specific locations in its judgment? Well, I think so, Your Honor. What I'm referring to. And why would that be? Doesn't easement just simply arise from use? And it doesn't necessarily have to be confined within certain borders. It simply is a matter of use over time. And that use over time, everybody recognizes where it lies. Well, in this instance, getting back to your point about a case, there's one that I recall that is in our brief and it refers to somebody wanted an easement for their irrigation pipeline. And he had been there for the statutory period, his pipeline and so forth. But the pipeline had been moved from a little bit or maybe a lot, I don't remember what, from time to time in the course of the 20 years. Well, you've got to have the location and the dimensions of the easement to know whether the other factors. Well, that raises the question. Was there at trial a dispute, evidentiary dispute, regarding where those easements were? I don't think there was. It's more like there was. Because if it's similar to the pipeline, I'm sure there was evidence introduced that those irrigation pipes were moved from time to time in different locations and that was the evidence. Well, Your Honor, there was actually, as I put in the brief, just very generalized testimony as to where the easement. Let me stop you for a minute. Pardon? The easement. Yes. Isn't the easement where the roads are located? The easement is, that was the problem. Nobody knew where the three roads were located by the time the lawsuit was filed. The parking lot. Wait a minute. These are roads. You get in a car and you go down the road. It's really a big parking lot. And the parking lot was paved over or asphalted over at some point before this lawsuit was even filed. Well, the roads that is described in the record of this case is the roads that go to the warehouse. Isn't that true? That is one. And isn't it also true that the judge said to the lawyers, you know, why don't you get together and show me exactly where this easement is and you can come to an agreement as to where the area was? Roughly that's true, yes, Your Honor. So what can a court do when the lawyers won't show the court where the area is? The court has to make their own determination, do they not? But the court needs evidence on that. That's what I'm saying. There's got to be evidence. And you must have evidence according to the cases that we've cited unless there is so-called color of title. Color of title is simply paper title. Paper title would set it out. But if you don't have that, then you've got to have evidence. An easement arises from the need of a property owner to have access to his property. Well. And to that extent, you know, the easement can be drawn up as narrowly as necessary, but I'm not sure that it's a burden of the plaintiff to give precise locations for that easement if it's to have access to its property. Well, I respectfully disagree with you, Your Honor. Unless there's paper, color of title, paper title, something that spells out where these easements are, you must come up with evidence of it. It seems to me that you run into trouble because when you have a situation where a parking lot gets paved over and they move curb, they do curb cuts here and they do curb cuts, they move curbs around, and after a number of years, all of a sudden you don't know where the easements are. You don't know where the three roads are supposed to be. Is that what you're saying? Yes, exactly, and I think that's what happened there. But there's no dispute that there were three easements at some point before the pavement, before the parking lot was paved. There were three crossovers. And the crossover, and I call them crossovers, it's distinct from easements, because it was Judge Mason. She assumed that the crossovers were used adverse to the owner of the, namely the railroad, the owner of the right-of-way, over the years. But, as a matter of fact, the documents that set up the easement in the first place, in 1880 and 1885, specifically referred to the easement as the railroad's easement of right-of-way. You know what I'm talking about. To operate the same, or continue the same, to be operated in such manner as to reasonably accommodate the business along the line and on either side of the tracks. Let's refer to it page 10. Yeah, but the tracks were removed by the railroad, or somebody somewhere down the line. Yes, Your Honor, they were removed sometime, it appears, according to the record, sometime in the 1980s. But what I'm pointing out is that the origin, the start of this railway right-of-way, was that they recognized that the businesses and other folks are going to have to cross over the tracks. And the idea, actually, was businessmen who conveyed this right-of-way to the railroad. They wanted to make it easier to run their business down this large part of the stockyards. And so they provided, you know, basically permissive crossovers for everyone. Well, that's the origin. And after that, there's absolutely no evidence that the parties crossing over were adverse to the railroad and claiming, well, we've got a right to be here whether you like it or not. The railroad always did it just permissively. That is the key part. And the location, well, that gets to the point of whether or not Judge Mason correctly assumed that the crossovers were adverse. They weren't adverse. She said she couldn't figure it out. Let's assume that we do not find any easements here. I mean, how's anybody going to get to the warehouse? There was, for whatever reason, I don't remember if easement by necessity was ever pleaded or not pleaded, but certainly that wasn't tried. So should a court just leave that warehouse alone there with no ingress and egress? Is that what you suggest? Well, unless the party has worked it out. Well, for one thing, they might sell it. Well, you guys haven't been able to work anything out, so how would we assume that you'll work it out now? You might. Still, the question is who owns the right-of-way. Well, we have to look at the whole picture, not one little piece of the picture. Well, there is no order from Judge Mason of easements by right-of-way, only easements by prescription. I'm sorry, easements by necessity. Let me ask you regarding permissive versus adverse easement. You say that the railroad gave what you term as a permissive easement. Yes. And eventually the railroad leaves the picture. And are you saying that the subsequent owners of that right-of-way are entitled to stand in the shoes, railroads, and are entitled to claim it as permissive, or aren't the other property of the South Branch, eventual South Branch, entitled to say that at that point it could become adverse to the subsequent owners, and if they don't give permission, then it becomes an easement by an adverse easement? Well, as a matter of fact, Justice Garcia, what happened was that after JS2 got the quick claim deed from Conrail, there was a point where JS2 instructed South Branch stop using the crossovers. But they continued to use the crossovers. I think at that point, that's when the use of the crossovers became adverse. But, of course, there's no adverse use by South Branch or any of its predecessors that runs the 20-year period to turn it into a prescriptive easement. So that's their problem. Well, your time is long run out. Is there something else you'd like to tell us? Thank you, Your Honor, for the invitation or the goodbye, whichever. I guess it's both. I would only say this. If you believe that South Branch has otherwise proven easements, the statute of limitations forecloses their claim, and there's a judicial admission in the record, namely the answer by South Branch to our interrogatory number five. And it's a sworn answer. And basically it says, and if my court will indulge me another 15 or 20 seconds, it's right here on page 12 of our orange-colored brief. And the answer is the easements, referring to three easements, are created by South Branch and its predecessors in interest as a result of having adversely, exclusively, continuously, and in an uninterrupted manner used the right-of-way as the sole and exclusive means of access to the property since at least 1911. So by 1951 that should have foreclosed any further. Unless it was interrupted. And there's evidence here that it was interrupted. I would respectfully disagree with the court on that. And maybe Judge Mason, she identifies the start, I think, of the claim or the easements as she said, 1974. But I do not respectfully disagree. I think the evidence shows otherwise. Just so it's clear, we don't have to believe anything. We just simply have to review Judge Mason's decision under the manifest weight standard of review. And I accept for those questions that you believe are questions of law, such as a claim that there's no evidence of supporting the other side. And that might be, in fact, a question of law. But otherwise, we defer to Judge Mason's decision, don't we? Your Honor, I'm painfully aware from my experience of that rule that has followed in bench trials. But I would say this, that the statute of limitations is not that rule. Unless it was a question of fact. But you say it wasn't. No, judicial admission, that's right. All right. And likewise, the need, if you're going to establish easements, that they must be located with the dimensions and actually the use as well. We're going to have 18-wheelers over there or cars, motorcycles or what. So that, I would say, is certainly not subject to the deferential rule. Okay. Thank you very much. Thank you, Your Honors. Thank you, Counsel. I just want to briefly respond to three points that Counsel made in opposition to our appeal. The first is he said that only the counterclaim was pending at the time we sought to reinstate or refile our claim for ownership. That's not true. The trial was on our claims for trespass and other claims and our claim for a declaration of easement and injunction. That was all pending. And once Judge Mason ruled – Pending in what stage? It couldn't have been pending in trial stage because the trial had concluded. And it couldn't be pending because then you have to refile, then it has to go sign to a judge, and that judge has to get the motion. And that takes some time. Well, the point is it wasn't just the counterclaim that was still unresolved. The judge had not entered an opinion. Well, why don't you give us the date? When did Judge Agram issue his order dismissing your newly filed action with prejudice under 619A3? If you'll indulge me. And then when did Judge Mason issue her decision? Judge Agram entered his order in October. The exact date I don't recall. Okay, in October. And Judge Mason entered her judgment in December. All right. So it's a two-month differential. But the trial had ended when? The trial ended in January of 2002 – 2006. You may want to go into some of the other issues. I do. Two other issues. When Judge Mason ruled that the defendants owned the right-of-way, she did so only on the merits of the quitclaim deed. The merits of that deed were not challenged in our case because we had dismissed our claim for ownership. So we could not file a notice of appeal on that ruling because it would have been an appeal on an issue to which we had entered no evidence at trial. And there's rules, this Court has rules about filing appeals on frivolous matters. As to – But you're not saying that because you didn't enter any evidence on that issue, the judge was obligated to accept all of the evidence presented by the other side on the ownership issue, did you? No, no, I'm not saying that. So the judge could have found that they were not the owners. She could have. And to the extent that the judge could have found that, you could have appealed saying that the evidence doesn't support the conclusion that they are the owners. Exactly. But you didn't. Because she didn't make that finding. She didn't make that ruling. So we couldn't appeal that. What we could appeal was her denial of our motion to reinstate. As to Judge Agnew's ruling on 2619A3 on our issue brought to him on Section 13217, this Court in Wade v. Biles some years ago discussed the tension between these two provisions but didn't resolve. In that case, the Court said we don't have to address that because those aren't our facts here. Well, the facts are here now. It's not an advisory opinion we're asking for. We're asking for the Court to look at those two sections and resolve the tension for a person in our position. Why don't you maybe make some headway in that direction by explaining to me, at least, why the claim that you dismissed wouldn't have been a proper response to the counterclaim filed by JS2? At the time that we tried the case, we had not found the Diaz case that suggested to us that... Was the Diaz case in existence at that time, even though you hadn't found it? It was. It was. And we only found it fortuitously. Under circumstances I don't have the time nor the privilege to explain. So let's go back to the original question, which is, would your Count 3 have been a response to the counterclaim that they were the outright owners? Had we been aware that we had a viable claim for ownership? Absolutely. Absolutely. Now, as to the defendant's appeal, the location of the easements is established in the record, testimony given by Warren Sutton, the man who worked on the property continuously, during the prescriptive period that the judge found. She found the prescriptive period began in 1978, when Harry Alter became the owner. And that's when Warren Sutton went on the property and he observed it continuously for the prescriptive period, which he left the property in 1999 or 2000. That's more than 20 years. The defendants purchased the property in 1999. Their deed is dated 1999. So 78 to 99 is 21 years. The prescriptive period has been established. As to the location of the... Why don't you address the adverse nature of that easement as opposed to the prescriptive? If the origin of the right-of-way or their easement is unknown, adversity is presumed. That's the case law. Judge Mason found, as a finding in her ruling, that the origin here was unknown. The deed is dated 1880, and then there's the later 1885 deed. And that grants the right-of-way. That deed, as Mr. Holloway mentioned, says that the railroad is to run, operate itself, the railroad, so as to accommodate the adjacent owners. It doesn't say you have to let them have crossovers. It just says accommodate them. And the reason is these owners, these property owners, certainly South Branch's predecessor in interest, was a business that functioned as a corollary to the stockyards. They were meat packers. And the railroad was used to transport the meat to the markets. We had no need for crossovers when the deed was issued, the 1880 deed and the 1885 deed, because the building wasn't built. The building was built 31 years later. So for 31 years, South Branch's predecessors in interest had absolute access to the property from 35th Street. We don't know, and this was not a judicial admission on Mr. Levy's part in answers to the interrogatories. A judicial admission occurs when a person with peculiar knowledge of the events that they're testifying about. And Mr. Levy could have no knowledge of what happened in 1991. He wasn't alive. And there isn't a record that says, if there had been a record that says, this is what occurred on this property in the intervening years, we certainly would have put it into evidence. So the origin of the easement is unknown. Therefore, under the case law, adversity is presumed. But if you don't agree with that, then it is incumbent on us under the case law to prove both knowledge on the part of the landowner and acquiescence. And Mr. Sutton's testimony does that as well. The train ran down the easement for as long as the tracks were there until he thinks sometimes in 1980s. The train took out some shrubs that he planted along the right-of-way, which shows at least the train engineer saw that people were crossing over in three places, crossing over the right-of-way. So that is knowledge on the part of the railroad and acquiescence because it didn't ever object. So in either case, we've established adversity, and we move on to the other elements. As to the element of location, Mr. Sutton testified in his direct and cross-examination with reference to exhibits that were in evidence, aerial photographs, and then there was the demonstrative, the platter survey. And he pointed out precisely where each of these easements, there are three driveways, there are three driveways crossing the railroad right-of-way. One serves the atrium or the canopy entrance to the building. One serves the loading dock area, and the other serves the north parking lot. And his testimony is those easements right at those driveways never changed. The location and character of them never changed in all the years that he worked on the property. Defendants put into evidence a diagram of their plat showing their proposed Bridgeport Village, which is defendants exhibit. All right. I think we get the picture that there is evidence supporting your side. Okay. All right. As to the document. Nobody put in evidence of meets and bounds descriptions, did they? No. Okay. That would have been kind of easy, wouldn't it? It would have. Okay. It would have. Judge Mason would not allow us to put that platter survey into evidence. That's what I had anticipated doing, but we used it as a demonstrative. And from that, Mr. Warren sought to offer his testimony. As to the document that creates an express easement, I've already argued that the documents themselves did not create, the deeds to the right-of-way did not create express easements. It just says you have to accommodate the adjacent landowners. There was an express easement granted to the Chicago Central Manufacturing District, but by the time that was granted, our property was outside of the chain of title there. So that express easement never entered to us. And that, I believe, covers all of my issues. If you have any further questions, I'll be happy to answer them. Otherwise, I, too, will say thank you very much for your time. Thank you very much, and thank you for giving us such an interesting case. We'll take it under advisement, and we'll now have a recess as we have to switch panels.